**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| TALENTED IT, INC.<br>An Illinois corporation, 800 W. Fifth Avenue, Suite 208, Naperville, IL 60563<br><br>      -and-<br><br>NISHANTH KOLLI<br>31-35-65, MIG 172, RajeevNagar, Kurmannapalem Gajuwaka, Visakhapatnam Urban Andhra Pradesh 530046 India<br><br><br>   Plaintiffs,<br><br>         against<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, 20 Massachusetts Ave NW, Washington DC 20529<br><br><br><br>                  Defendants. | Case No.:<br><br>COMPLAINT |

1

## **COMPLAINT**

### I. INTRODUCTION

1. This is an action brought under the Administrative Procedure Act seeking to have the United States Citizenship and Immigration Services' decision denying TALENTED IT Inc. (Talented IT)'s petition to classify NISHANTH KOLLI as a specialty occupation worker held unlawful and set aside. As will be shown the decision ignored critical evidence and misstated both the law and the record in coming to its arbitrary and legally erroneous conclusions.

### II. PLAINTIFFS

2. Talented IT is an Illinois corporation and a global business and technology consulting firm that partners with clients to achieve breakthrough performance through the intelligent use of Information Technology. Established in 2004, Talented IT provides consulting, technical support and services to the Information Technology industry. The company provides a full range of information technology services in system evaluation, design, development and integration. Talented IT currently employs approximately 28 individuals and achieves a gross annual income in excess of six million dollars. Because of its inability to recruit sufficient numbers of qualified U.S. citizens or permanent resident IT professionals, Talented IT has been compelled to recruit highly trained foreign professionals such as Mr. Kolli to satisfy its clients' pressing IT needs.

3. Nishanth Kolli is a native and citizen of India currently residing in India. He has earned a Bachelor and Master of Technology degrees from leading universities in India, the academic equivalent of a U.S. Bachelor's and Master's degree in Engineering, and has over 13 years of progressively responsible experience in the field of Computer Information Systems. His

education and experience, taken as a whole, has been evaluated by a Professor of Computer Science and a Professor of Computer Systems Technology to be the equivalent of a U.S. Bachelor's degree in Computer Information Systems.

## III. DEFENDANT

4. The defendant, United States Citizenship and Immigration Services (USCIS), is an agency of the United States government residing in the District of Columbia.

## IV. JURISDICTION

5. This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101, *et. seq.,* and the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

## V. STANDING

6. Talented IT has a legally protected interest in a decision by the USCIS on its petition upon Mr. Kolli's behalf which is not arbitrary and capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and the invasion of this right has caused it concrete and particularized injury in that, as a result of this invasion, Talented IT can no longer employ Mr. Kolli, and, therefore, cannot derive the revenue it previously received from the sale of his services to its client;   (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of Talented IT's petition that has caused Talented IT to sustain this loss and (3) it is reasonably certain that the

injury-in-fact will be redressed by a favorable ruling in that an approval of Talented IT's petition will qualify him to apply for an H-1B visa with which he can return to the United States to be employed by Talented IT.  Accordingly, Talented IT has standing to complain of this action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

7. Mr. Kolli likewise has a legally protected interest in a decision by the USCIS on Talented IT's petition upon his behalf which is not arbitrary, capricious, nor an abuse of discretion, and which is in accordance with law, per 5 U.S.C. § 706(2), and this right has been invaded in that the improper denial of Talented IT's petition has caused him concrete and particularized injury in that as a result of this denial he can no longer be employed by Talented IT and so cannot derive the revenue he previously received from his employment and, further this denial has deprived him of an extension of his legal status in the U.S. and so compelled him to depart the country; (2) there is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of Talented IT's petition and Mr. Kolli's application for extension of stay  which caused him to cease working for Talented IT and to depart the country and (3) it is reasonably certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Mr. Kolli to apply for an H-1B visa to be able to return to the United States to be employed by  Talented IT. Further, Talented IT wishes to employ Mr. Kolli in the offered position. Accordingly, Mr. Kolli has standing to complain of this action. *Lujan, supra.*

VI. VENUE

8. Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of Columbia, where the defendant resides.

4

## VII. BRIEF STATEMENT OF PROCEDURAL HISTORY

## AND LEGAL BACKGROUND

9. On or about April 12, 2018 the plaintiff, Talented IT filed a Petition for a Nonimmigrant Worker (Form I-129), with U.S. Citizenship and Immigration Services (USCIS), seeking to classify Nishanth Kolli, as a temporary worker in a specialty occupation (H-1B) under section 101(a)(l5)(H)(i)(b) of the Immigration and Nationality Act (INA), and, concurrently, a change of Mr. Kolli's nonimmigrant status in the U.S. from F-1 (foreign student) to H-1B (specialty occupation worker). Its petition contained an offer to Mr. Kolli of a job entitled "Software Engineer" in which he would perform the following duties:

- Understand the transportation industry and railroad topology.

- Design and develop sophisticated statistical and quantitative approaches, databases, and models for analysis using advanced technical skills and extensive knowledge of all train system data.

- Develop the visualization interfaces by using advanced technology for efficient dissemination of the complex information to large groups of users across the enterprise.

- Retrieve and analyze large amounts of data from various data warehouses for decision making using advanced data manipulation, forecasting techniques and predictive modeling.

- Review database test cases according to assigned requirements to validate reports by retrieving data with complex SQL queries from SQL Server.

- Responsible for writing programs to maintain and control computer systems software for operating systems, networked systems, and database systems.

- Modify existing databases and database management systems & direct programmers to make changes.

- Test databases, correct errors and make necessary modifications.

- Work as part of a project team to coordinate database development and determine project scope and limitations.

- Conduct System Testing and User Acceptance Testing for every client and Conducted Backend testing writing extensive SQL queries.

- Write logical and physical database descriptions and specify identifiers of database to management system & direct others in coding descriptions.

- Specify users and user access levels for each segment of database.

- Responsible for creating the software platform, and then fine-tuning the final program after it has been made.

- Create UFT/QTP automated test scripts. Create SQL queries with TOAD. Track defects and Test.

- Implement components (Program, Specifications, build etc.) for complex IT solutions.


10. These duties would be performed in a Technical Environment which consisted of SQL Server, TOAD, Shell, Python, VBA, Jenkins, Cucumber, JIRA, Bug host, Rally, HTML, XML, JavaScript. The petition included Mr. Kolli's Master of Science diploma in Computer Science and Information Technology from Sacred Heart University in Connecticut and a Bachelor of Technology diploma in Computer Science and Engineering from Jawaharlal Nehru Technological University Kakinada in Andhra Pradesh, India.

11. On September 5, 2018, the USCIS issued a request for additional evidence that the job offered the beneficiary, Mr. Kolli, was in fact a specialty occupation. In that request, the USCIS also asserted that insofar as the beneficiary is placed at one or more third-party worksites, a petitioner must demonstrate that it has specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested on the petition. A petitioner will need to show that:

- It has a specific work assignment in place for the beneficiary;

- The petition is properly supported by a Labor Condition Application (LCA) that corresponds to such work; and

- The actual work to be performed by the H-1 B beneficiary will be in a specialty occupation based on the work requirements imposed by the end-client, who uses the beneficiary's services. See *Defensor v. Meissner,* 201 F.3d 384, 387 (5th Cir. 2000). The USCIS claimed that the evidence filed in support of the petition did not establish these points. Accordingly, the Agency directed Talented IT to "provide additional evidence to establish that you will employ the beneficiary in a specialty occupation. Evidence may include, but is not limited to the following types of evidence". The USCIS then provided a list of the examples of the evidence which Talented IT might use to establish this point, including in that list "a copy of a signed Employment Agreement between you and the beneficiary detailing the terms and conditions of employment."

12. On approximately November 29, 2019, Talented IT responded to the Agency's request with, among other things, the following evidence that the benefit that Mr. Kolli was being offered employment in a specialty occupation.

- Excerpts from the Occupational Outlook Handbook demonstrating that the normal requirements for a software developer is a bachelor's degree in computer science, software engineering, or related field.

- An opinion letter from Michael Keith Lavine Ph.D., a Senior Technical Auditor for T. Rowe Price, Full Adjunct Professor of Cyber Security at the University of Maryland-University College, who has over 25 years of experience in the information systems and development fields, including implementing technology projects for Fortune 1000 companies and international corporations.

13. Talented IT asserted, and USCIS did not dispute, that Prof. Levine was an "expert" who explained why the job offered Mr. Kolli was that of a software developer and why the nature of the specific duties of the job offered Mr. Kolli was so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree in Computer Science, Information Systems, or a related area.

14. Talented IT also provided in its response a number of the items which the request for evidence had identified as indicating that there was sufficient specialty occupation work available for the beneficiary including the following:

- A copy of a signed Employment Agreement between Technical IT and Mr. Kolli detailing the terms and conditions of his employment.

- Documentary evidence showing that the end-client required the Mr. Kolli's services, and the end-client's requirements for the position (a minimum of a Bachelor's degree, or its equivalent in Computer Science or Information Systems) for all of the client facilities where Mr. Kolli would be employed.

- Copies of relevant, signed contractual agreements between Talented IT and all other companies involved in Mr. Kolli's placement (Tech Mahindra (Americas) Inc).

- A copy of Talented IT's organizational chart, demonstrating Mr. Kolli's supervisory chain.

15, Nevertheless, on January 14, 2019, the USCIS issued the decision denying Talented IT's petition upon Mr. Kolli's behalf, as well as his application to change his nonimmigrant status to H-1B. The sole basis for the denial was that Talented IT had failed to establish that the job offered was in a specialty occupation; and, while conceding that Talented IT "submitted a letter from GE transportation [and that] this letter generally describes the beneficiary's proposed duties", the Agency nevertheless found that "the present record does not demonstrate the specific duties the beneficiary would perform under contract for your clients". This action ensued.

III CAUSE OF ACTION

16. 5 U.S.C. § 706 provides in material part that: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an Agency action. The reviewing court shall--

…

(2)  hold unlawful and set aside Agency action, findings, and conclusions found to be--

(A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

COUNT I

***The decision was arbitrary because it ignored evidence in the record contradicting its argument.***

17. The decision concluding that the job offered was not that of a software developer was arbitrary because it ignored the expert's opinion that, in fact, it was. Under USCIS regulations, a job qualifies as a specialty occupation if it meets one of the following criteria:

1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

18. In discussing whether the job offered was in a specialty occupation under the first criteria, the USCIS conceded that "the OOH does indicate that Software Developer positions normally require a minimum of a bachelor's degree in a specific specialty," but nevertheless denied that the job offered was a specialty occupation because "the duties you described do not appear to be that of a Software Developer". However, in doing so, the USCIS ignored entirely the expert

opinion of Prof. Michael Lavine, who explained at considerable length as to why exactly the job offered was in fact that of a Software Developer as described in the OOH. Prof. Lavine opined that:

> "after comparing the responsibilities, of this Software Engineer position to existing job categories as defined by the Occupational Outlook Handbook 2018-2019 Edition (OOH) published by the United States Department of Labor/Employment and Training Administration (USDOL/ETA), it is clear that this position should be classified as a "Software Developer" occupation. The OOH classification for Software Developers indicates that individuals in these types of positions are responsible for such duties as analyzing users' needs and then designing, testing, and developing software to meet those needs; recommending software upgrades for customers' existing programs and systems; designing each piece of an application or system and planning how the pieces will work together; creating a variety of models and diagrams (such as flowcharts) that show programmers the software code needed for  an application; ensuring that a program continues to function normally through software maintenance and testing; documenting every aspect of an application or system as a reference for future maintenance and upgrades; and collaborating with other computer specialists to create optimum software. Upon comparing the duties performed by the Software Engineer for Talented IT with the duties generally performed by Software Developers, it is apparent that the Software Engineer's duties are typical of a Software Developer and clearly correspond to the duties listed under the category of Software Developer in the OOH. It is noted in OOH that the entry level education for a Software Developer is a Bachelor's Degree, and that most have a Bachelor's Degree in a computer-related field."

19. Established law provides that '[A]n Agency cannot ignore evidence contradicting its position." *Genuine Parts Co. v. EPA,* 890 F.3d 304, 312 (D.C. Cir. 2018), quoting *Butte Cty. v. Hogen,* 613 F.3d 190, 194, 392 U.S. App. D.C. 25 (D.C. Cir. 2010); and *Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs.,* 2018 U.S. Dist. LEXIS 196284, *30. The Agency's failure to even acknowledge the fact that Prof. Lavine had addressed this issue (persuasively and at length) makes its consequent decision arbitrary. Further, Prof. Lavine's opinion establishes conclusively that the USCIS was simply wrong in its claim that the job offered did not meet the definition of a software developer. Given the Agency's concession that a Software Developer is a specialty occupation, Prof. Lavine's opinion vitiates the entire basis upon which the Agency concluded that the job offered to Mr. Kolli was not in a specialty occupation.

20. However, that was not the only reason that the Agency was incorrect in determining that the job offered was not a specialty occupation – it made an even more conspicuous, indeed almost comical, error subsequently in its decision in (erroneously) concluding that the job offered did not meet the 4th criterion either.

COUNT II

***The USCIS's holding that the nature of the specific duties of the job offered were not so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree was arbitrary because it ran counter to the evidence before the Agency.***

21. As noted above, Talented IT needed only to establish that the position offered the beneficiary was a specialty occupation under one of the four criteria set forth in 8 CFR 214.2(h)(4)(iii). Not only did the Agency act arbitrarily in finding that the job did not normally require the qualifications commensurate with a specialty occupation under criterion one, the Agency also acted at least as arbitrarily, if not more, in determining that the job offered was not a specialty occupation under criterion four.

22. The USCIS concluded that the nature of the specific duties of the job offered were not so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree because "The professor (Michael Lavine) indicates that the duties of the proffered position are the same as the duties listed in the OOH and the DOL's O*NET Online; however, the duties listed by you contradict that assertion and appear to have more of a testing role than a software developer role." However, as the Agency itself acknowledged just a few pages earlier in its decision, that the OOH description of the duties of Software Developers includes the task of *testing*, e.g.:, "Analyze users' needs and then design, *test*, and develop software to meet those needs."

23. It defies comprehension as to how any rational decision-maker could conclude that the job offered is not consistent with the OH's description of a software developer simply because the job involves testing, when testing is, in fact, a duty of a software developer. Accordingly, the Agency's conclusion that the job offered was not a specialty occupation because it involves testing was both irrational and arbitrary.

COUNT III

***The Agency's holding that the record did not demonstrate that the specific duties that the beneficiary Mr. Kolli would perform under Talented IT's contract with GE transportation was arbitrary in that it ran counter to the evidence before the Agency.***

24. The Agency relied upon the Fifth Circuit Court of Appeals' decision in *Defensor v. Meissner,* 201 F. 3d 384 (5th Cir. 2000) for the proposition that "the Immigration and Naturalization Service (now USCIS) had reasonably interpreted the INA and regulations to require that a petitioner produce evidence that the proffered position qualifies as a specialty occupation on the basis of the requirements imposed by the entities using the beneficiary's services". On this ground, it apparently concluded that failure to provide such evidence is a valid basis for denial even where, as here, the job offered is certainly a specialty occupation. The Agency's holding is wrong as a matter of law – this is simply not what court held. It is equally important that the Agency was wrong as a matter of fact. Note that the decision itself concedes that the petitioner "submitted a letter from GE Transportation. This letter generally describes the beneficiary's proposed duties."

25. Nor can the Agency possibly dispute that this letter also specified GE's requirements as "a minimum of a Bachelor's degree, or its equivalent in Computer Science or Information Systems." In any event, even the briefest review of the *Defensor* decision shows that the USCIS is entirely in error in this particular decision.

26. In *Defensor,* a petitioner claimed that the job offered of nurse qualified as a specialty occupation because the petitioner required a bachelor's degree in nursing for the position. *Id.*, 201 F.3d at 387. Because the petitioner in *Defensor* (Vintage) could not prove that the hospital to which it contracted the beneficiaries' services required a bachelor's degree in nursing, "it was not an abuse of discretion to interpret the statute and regulations so as to require Vintage to adduce evidence that the entities actually employing the nurses' services required the nurses to have degrees, which Vintage could not do." *Id.* at 388.

27. However, proving that a job is a specialty occupation by demonstrating that the petitioner required a specialized degree is only one of the four ways that one may establish that a job is a specialty occupation under 8 CFR 214.2(h)(4)(iii)(A). All that the court in *Defensor* stated was that in determining what the employer's requirements were, and in establishing that a job is a specialty occupation under § 214.2(h)(4)(iii)(A)(3), it was appropriate to take into consideration the end-client's requirements for the job as well. This simply bears no relevance to the issue of whether the job offered qualified as a specialty occupation under 8 CFR 214.2(h)(4)(iii)(A)(1) or (4) as the record shows in this case that it does. Therefore, even if the record had failed to demonstrate that the specific duties that Mr. Kolli would perform under contract for GE Transport, such a finding would not serve as a valid basis for denial so long as Talented IT was able to show that the job was a specialty occupation under criteria (1) and/or (4). *Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs.,* 2018 U.S. Dist. LEXIS 196284, *31 ("More importantly, though, Stellar IT did not even need to show that Honda required a degree in a specific specialty in order to meet its burden on this issue. It was permitted to instead show that the "degree requirement [wa]s common to the industry in parallel positions among similar organizations." 8

C.F.R. § 214.2(h)(4)(iii)(A)."). Thus, the petitioner in the instant case has both met and exceeded the evidentiary standard set forth by the *Stellar* decision.

28. In any event, the USCIS was simply in error as to the facts at issue in the instant case. Indeed, the Agency admitted unequivocally that the record contained a letter from the end-client, GE Transportation, describing the beneficiary's proposed duties." Nor can it be denied that the letter indicated that the end-client required a "minimum of a Bachelor's degree, or its equivalent in Computer Science or Information Systems" for the position.

29. Accordingly, the Agency's conclusion that this petition is deniable because the factual record failed to establish the specific duties that Mr. Kolli would perform under contract for GE transport is erroneous as a matter of fact or, to put in the language of APA review, arbitrary and capricious because it is unsupported by substantial evidence. *Association of Data Processing Serv. Orgs. v. Board of Governors*, 240 U.S. App. D.C. 301, 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J). Furthermore, the Agency's decision is inconsistent with law because the issue of whether the offered job qualified as a specialty occupation under criterion three of eight CFR 214.2(h)(4)(iii)(A)(3) is immaterial to the fact that it qualifies under criteria one and four. Further, the Agency's conclusion is arbitrary in that it goes against both the established law and the weight of the evidence in the record.

WHEREFORE, inasmuch as the sole basis for the denial of the Talented IT's petition upon Mr. Kolli were arbitrary and capricious, it is respectfully requested that this Court hold

unlawful and set aside the decisions denying Talented IT's petition for a nonimmigrant visa on

Mr. Kolli's behalf.


Respectfully submitted this 3rd day of May, 2019

*s/Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway, Ste 307
New York, NY 10007
646-845-9895
michaelpiston4@gmail.com

## CERTIFICATE OF SERVICE

I certify that the foregoing was served today upon the defendant at its last

known address by depositing it with United Parcel Service for next day delivery to:


United States Citizenship and Immigration Services
20 Massachusetts Ave NW
Washington DC 20529

It was also served in the same day and the same manner upon the

defendant's presumed counsel:

United States Attorney's Office
c/o Civil Process Clerk
555 4th St NW, Washington, DC 20530


s/ Michael E. Piston
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway Suite 307
New York, NY 10007
646-845-9895

Dated: May 3, 2019